IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| FRIENDS OF THE BITTERROOT, and ALLIANCE FOR THE WILD ROCKIES,<br><br>　　　　　　Plaintiffs,<br><br>vs.<br><br>MATT ANDERSON, Supervisor, Bitterroot National Forest; LEANNE MARTEN, Regional Forester, U.S. Forest Service Northern Region; U.S. FOREST SERVICE.<br><br>　　　　　　Defendants. | CV 20–104–M–DLC<br><br><br>ORDER |

Before the Court is Defendants' Motion to Dismiss Plaintiffs' Complaint. (Doc. 7.)  Defendants maintain that this dispute is moot, and, consequently, this Court lacks subject matter jurisdiction.  For the reasons stated herein, the Court agrees.  Accordingly, the motion will be granted and this lawsuit dismissed.

**BACKGROUND**

The facts forming the basis of this dispute are straightforward.[1]  On

---

[1] As a threshold matter, and as discussed below, because Defendants' motion (Doc. 7) is a factual attack brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the relevant facts underlying Plaintiffs' claims need not be derived solely from their complaint (Doc. 1).  Instead, this Court "is not confined by the facts contained in the four corners of the complaint—it may consider facts and need *not* assume the truthfulness of the complaint."

1

November 15, 2019, the United States Forest Service ("Forest Service") issued its Final Record of Decision establishing the Gold Butterfly Project ("Project") within the Bitterroot National Forest. (Doc. 9 at 2, 5–27.) The Project encompassed 55,147 acres "roughly 7.5 miles east of Corvallis and 9.25 miles northeast from Hamilton, Montana, in the Burnt Fork and Willow Creek drainages on the Stevensville Ranger District." (*Id.* at 2.)

As stated by Matthew Anderson, the Forest Supervisor of the Bitterroot National Forest, the Project's objectives "were to improve forest resilience to natural disturbances, to reduce sources of sediment in the Willow Creek watershed, to restore or improve key habitats such as meadows, aspen and whitebark pine and to provide forest projects to local communities." (*Id.*) To this end, the Project authorized, among other things, 5,461 acres of commercial timber harvesting, 7,238 acres of non-commercial timber harvesting, and 4,854 acres of prescribed burning activities within areas containing old growth.[2] (*Id.* at 14.) Plaintiffs also allege the Project authorized various undertakings associated with road construction and maintenance, relocation of trailheads, and establishment of new campsites for stock use. (Doc. 1 at 6–7.)

---

*Americopters, LLC v. F.A.A.*, 441 F.3d 726, 732 n.4 (9th Cir. 2006). Thus, the relevant facts are gleaned from the various materials filed by the parties.

[2] As discussed below, the proper definition of "old growth" is a point of contention and forms a basis of this lawsuit. It is not necessary for this Court to adjudicate what is or is not properly designated "old growth" forest and it declines to do so.

On July 10, 2020, Plaintiffs filed the instant lawsuit leveling several legal challenges to the Project. Specifically, Plaintiffs complain that: (1) the Project violates the NFMA, NEPA, and APA by defining "old growth" in a manner contrary to the more protective definition found within the Bitterroot Forest Plan; (2) the Project's amendment of the Bitterroot Forest Plan eliminates or alters various elk population protections in violation of the NFMA, NEPA, and APA;[3] and (3) Defendants' reliance on 16 U.S.C. § 6591a(d) to approve the Project violates the HFRA, NEPA, and APA. (*Id.* at 34–41.) As redress, Plaintiffs seek a declaration that the Project is unlawful and an injunction vacating the Final Record of Decision or enjoining its implementation. (*Id.* at 42.)

Following the filing of this lawsuit, on August 28, 2020, Mr. Anderson issued a letter withdrawing the Final Record of Decision authorizing the Project. (Doc. 9 at 2, 30.) This letter states:

> I have decided it is in the best interest of the public to withdraw the decision and direct my staff to conduct additional review and analysis. Any new decision will proceed through required NEPA and public involvement procedures. This will ensure the public will have the opportunity to participate in the future planning for this project.

(*Id.*) Additionally, Mr. Anderson has filed a declaration stating that following such

---

[3] Notably, this "amendment" is more appropriately characterized as a project-specific variance to the Bitterroot Forest Plan, and, thus its legal effect perishes with the Project. (Docs. 1 at 23–24; 12-3 at 225–29; 12-5 at 124.) Such project-specific variations are permissible because Forest Service officials are afforded broad discretion in determining "the scope and scale of any amendment" to the Bitterroot Forest Plan. 36 C.F.R. § 219.13(a).

3

"additional review and analysis, and if the Project proceeds, the public will have an additional opportunity to participate in the planning of this Project by commenting and by filing objections to any proposed decision." (*Id.* at 2.)

Moreover, it also states that any "new decision will proceed through the required" NEPA and public involvement procedures. (*Id.* at 3.) Mr. Anderson maintains that at this time, and unless a new decision is issued regarding the Project, "no project activities are authorized, and none will occur." (*Id.*) Finally, Stephen Brown, the District Ranger for the Stevensville Ranger District, has submitted a declaration stating that a supplemental Environmental Impact Statement for the Project is being prepared and "will be made available for public comment in draft form." (Doc. 14 at 2.) As a result, the Defendants have moved to dismiss this action arguing that it is moot. (Doc. 7.)

## STANDARD

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). This notion is derived from the United States Constitution itself, which limits the Court's subject matter jurisdiction to justiciable "cases" or "controversies." U.S. Const., Art. III, § 2. The federal courts' limited jurisdiction "is founded in concern about the proper—and properly limited—role of the courts in a democratic

society." *Summers v. Earth Island Inst.*, 555 U.S. 488, 492–93 (2009) (internal citations omitted).

As such, it is incumbent upon this Court to ascertain whether subject matter jurisdiction exists before analyzing the merits of a litigant's claims. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Indeed, this Court is to presume it is without jurisdiction to hear a case until a contrary showing is made. *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). Subject matter jurisdiction is "the courts' statutory or constitutional power to adjudicate the case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). This includes underlying concepts such as mootness. *Rosemere Neighbrohood Ass'n v. U.S. Envtl. Prot. Agency*, 581 F.3d 1169, 1172 (9th Cir. 2009).

The Federal Rules of Civil Procedure authorize a motion to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Issues of mootness, such as those raised here, are properly advanced through Rule 12(b)(1) motions. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack argues there is want of jurisdiction based on the allegations in the complaint alone. *Id.* A factual attack, however, relies "on extrinsic evidence and [does] not assert lack of subject matter jurisdiction solely on

5

the basis of the pleadings." *Id.* (internal citations and quotation marks omitted).

This distinction is critical, because Rule 12(b)(1) factual attacks, as opposed to Rule 12(b)(1) facial attacks, permit the Court to "look beyond the complaint . . . without having to convert the motion into one for summary judgment." *Id.*; *see also White*, 227 F.3d at 1242. Here, as noted above, Defendants do not argue that the Plaintiffs' complaint, standing alone, is insufficient to invoke this Court's subject matter jurisdiction. On the contrary, Defendants contend that factual developments occurring after the filing of the complaint have extinguished this Court's subject matter jurisdiction. (*See generally* Doc. 8.) Accordingly, this Court looks beyond the Plaintiffs' complaint in determining whether it currently possesses the constitutional authority to adjudicate this dispute.

## DISCUSSION

Article III courts lack subject matter jurisdiction over moot lawsuits. *Rosemere*, 581 F.3d at 1172. This is so because federal courts must "avoid advisory opinions on abstract principles of law." *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1065 (9th Cir. 2002). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Put another way, a case becomes moot when "changes in the circumstances that

prevailed at the beginning of litigation have forestalled any occasion for meaningful relief." *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005) (en banc).

As such, the critical mootness inquiry is whether "it is impossible for a court to grant any effectual relief" to the prevailing party. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). To this end, the mere cessation of the conduct complained of by Plaintiffs is insufficient to moot their claims as long as "effective relief may still be available to counteract" the conduct's detrimental effects. *Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001). As discussed below, the Court finds no relief that can still be effectively afforded to the Plaintiffs in this lawsuit.

Additionally, there are two important exceptions to the general rule that a federal court is without subject matter jurisdiction to adjudicate a moot lawsuit. First, is the voluntary cessation exception, which provides that a federal court is not without jurisdiction to adjudicate a dispute by virtue of a defendants "voluntary cessation of allegedly illegal conduct . . . unless it can be said with assurance that there is no reasonable expectation that the alleged violation will recur and interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Fikre v. F.B.I.*, 904 F.3d 1033, 1037 (9th Cir. 2018) (internal citations, quotations, and alterations omitted).

Second, is the capable of repetition yet evading review exception, which

provides that a federal court is not without jurisdiction to adjudicate a dispute when "the challenged action was . . . too short to be fully litigated prior to its cessation or expiration" and "there [is] a reasonable expectation that the same complaining party w[ill] be subjected to the same action again." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982). Each exception is addressed below and ultimately found to be inapplicable.

At the outset the Court finds it prudent to address where the burdens lie in this particular case. The Defendants contend that Plaintiffs bear the burden of establishing the Court's subject matter jurisdiction, *i.e.* that the dispute is not moot. (Doc. 8 at 5, 7.) Plaintiffs respond by arguing that Defendants bear the burden of establishing the Court's lack of subject matter jurisdiction, *i.e.* that the dispute is moot. (Doc. 12 at 16.) Given the posture of this case, Plaintiffs correctly articulate the applicable framework.

Ordinarily plaintiffs bear the burden of establishing a federal court's subject matter jurisdiction over claims they have brought. *See, e.g., Meyer*, 373 F.3d at 1039. When a litigant contends that subject matter jurisdiction is nonexistent on mootness grounds, however, that party bears the burden of proof. *Southern Or. Barter Fair v. Jackson Cty, Or.*, 372 F.3d 1128, 1134 (9th Cir. 2004). And Defendants' burden in this case is particularly heavy, because courts are especially concerned with the ways in which the Forest Service can strategically structure

8

projects so as to "ignore the requirements of NEPA . . . and then hide behind the mootness doctrine." *Cantrell*, 241 F.3d at 678. Nonetheless, as addressed below, the Court finds that Defendants have successfully carried their burden.

Turning first to the question of mootness, Defendants argue that this lawsuit no longer presents a live case or controversy because the Final Record of Decision authorizing the Project has been withdrawn. (Doc. 8 at 7–10.) In response, Plaintiffs contend that, despite the withdrawal of the Final Record of Decision authorizing the Project, this case is not moot under the Ninth Circuit's holding in *Forest Guardians v. Johanns*, 450 F.3d 455 (9th Cir. 2006). (Doc. 12 at 19–23.) The Court finds *Johanns* inapplicable.

In *Johanns*, Forest Guardians sued Forest Service officials complaining that the agency's failure to re-initiate Section 7 consultation for certain national forest allotments violated the Endangered Species Act. 450 F.3d at 459. As relief, Forest Guardians sought a declaratory judgment that the agency's actions violated the ESA and an injunction "requiring the agency to re-initiate consultation on the challenged allotments." *Id.* at 460. After the district court found re-initiation was not required, Forest Guardians appealed to the Ninth Circuit. *Id.* at 461. After filing the appeal, but prior to adjudication, the agency "re-initiated consultation" on its own accord.

In addressing the question of whether the agency's re-initiation of

consultation had mooted the appeal, the Ninth Circuit concluded that "although it is true that the only agency action sought by Forest Guardians in this appeal—re-initiation of informal consultation on Water Canyon—has already occurred, that is not the only form of effective relief that Forest Guardians seeks or that the district court may grant." *Id.* at 462. Importantly, this conclusion rested on two critical observations which have proven indispensable to *Johanns*' application in subsequent cases. *See, e.g., Alliance for the Wild Rockies v. U.S. Dep't of Ag.*, 772 F.3d 592, 601 n.4 (9th Cir. 2014).

First, the case involved "a continuing practice" because the allotments at issue enjoyed a ten-year term, requiring the agency's annual re-initiation of consultation during the life of the allotment. *Id.* at 462. Second, the case demonstrated that the agency was "likely to persist" in its "practice of not complying" with the law despite the recent re-consultation" because it had "argued throughout th[e] litigation that it is not required" to engage in such consultation. *Id.* As such, the Court found that "a declaratory judgment that the Forest Service's actions . . . violated the ESA would provide effective relief by governing the Forest Service's actions for the remainder of the allotment's permit term and by prohibiting it from continuing to violate the law." *Id.* at 462–63. Accordingly, the case was not moot. *Id.* at 463.

The situation confronting this Court here is readily distinguishable from the

situation confronting the Ninth Circuit in *Johanns*. First, there is no evidence of a continuing practice. The only argument Plaintiffs advance in favor of the existence of a continuing practice is that other projects, such as Piquet Creek Project and the Buckhorn Project, within the Bitterroot National Forest suffer from similar legal defects to the Project challenged in this case. (Doc. 12 at 13–15, 20–21.) Critically, however, the Plaintiffs' complaint does not challenge the validity of, or even mention, those other projects. (*See generally* Doc. 1.)

This Court cannot address the legality of Forest Service projects not challenged in the complaint. *Trishan Air, Inc. v. Federal Ins. Co.*, 635 F.3d 422, 435 (9th Cir. 2011) (holding that claims not raised in a plaintiff's complaint are not "properly before [a] district court"); *see also Wildwest Inst. v. Seesholtz*, 2008 WL 3289486, *3 (D. Idaho 2008) (finding itself without power to consider the legality of "other logging projects in the area" when the plaintiff had "not challenged those projects in this lawsuit"). Accordingly, Plaintiffs reliance on other projects within the Bitterroot National Forest to establish the existence of a continuing practice is equivalent to providing no argument at all. Nothing prevents Plaintiffs from initiating lawsuits to challenge those other projects, but they are of no relevance to this dispute.

Regarding the project challenged in this action, the record makes clear that withdrawal of the Final Record of Decision authorizing the Project has ceased any

contemplated Project activities and eliminated any risk of injury of which the Plaintiffs' complain. (Doc. 9 at 2.) Any new project in the subject area of the Bitterroot National Forest will go through the proper procedures before formal adoption occurs. (*Id.* at 2–3, 30.) Should the legal defects of the which the Plaintiffs complain find their way into a new record of decision, then Plaintiffs would, of course, be free to file a new complaint. *See Oregon Wild v. Constance Cummins*, 239 F. Supp. 3d 1247, 1264–65 (D. Or. 2017). In sum, the Court finds no continuing practice analogous to that present in *Johanns*.

Second, there is no evidence of a persistent violation of the law. Contrary to *Johanns*, Defendants have not questioned the validity of the legal defects in the Project identified in Plaintiffs' complaint. Indeed, it is at least reasonable to conclude that the instant lawsuit served as a catalyst for withdrawal of the Final Record of Decision. This is not to say Defendants have admitted the Project suffers from any legal defects, but such an admission is unnecessary to support a finding that no persistent violation of the law is present here. To the extent Plaintiffs rely on legal violations in other projects within the Bitterroot National Forest, as noted above, such violations are irrelevant to the present inquiry and are not properly before this Court. Thus, unlike *Johanns*, the record contains nothing supporting a finding that the Defendants have a practice of violating the laws Plaintiffs maintain were contravened in authorizing the Project.

Having found *Johanns* inapplicable, this Court can readily conclude the dispute is moot. As discussed at length, the Project has been fully withdrawn, and although it is likely, this Court cannot say for certain it will return. (Doc. 9 at 2–3.) The record does not indicate any affirmative conduct was undertaken to accomplish the Project and thus the Court cannot provide any meaningful relief designed at remedying that conduct. *Northwest Envi. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1245 (9th Cir. 1988) (holding that a challenge to several agency management measures governing the 1986 salmon fishing season was not mooted by the close of the season because "the relief for the alleged overfishing in 1986 can take the form of higher escapement provisions and lower quotas in" subsequent seasons).

The absence of any affirmative action to accomplish the Project is critical, as "withdrawal of a *partially completed* project" has been found insufficient to moot a NEPA action because relief remediating the damage occasioned by such partial completion can be afforded. *See, e.g., Murphy v. U.S. Forest Serv.*, 2016 WL 366434, *2–3 (E.D. Cal. 2016) (emphasis added); *see also West v. Secretary of Dept. of Transp.*, 206 F.3d 920, 924–26 (9th Cir. 2000) (finding a project's partial completion insufficient to moot a NEPA action because the effects of such completion remain remediable). Because no Project activities were undertaken prior to its withdrawal, no injury has been inflicted, and no damage can be repaired

through the fashioning of a judicial remedy.

As previously stated by this Court, "[n]o project means no violations, and no violations means this case is moot." *Native Ecosystems Council v. Weldon*, 2012 WL 5986475, *3 (D. Mont. 2012) (CV 11–99–M–DWM); *see also Alliance for the Wild Rockies v. Reilly*, 2005 WL 2872025, *1 (9th Cir. 2005) (holding that the Forest Service's withdrawal of the Post Fire Project within the Beaverhead-Deerlodge National Forest mooted any dispute over its validity). This Court will not issue an advisory opinion as to the legality of a Forest Service project that has been unequivocally withdrawn, nor will it enjoin Defendants from implementing a project they themselves no longer seek to implement. Any subsequent authorization of the Project must proceed through the proper administrative channels and will be subject to judicial review. In short, the Court finds no injury capable of redress and the action is moot.

Having concluded that this dispute is moot, the Court next addresses whether either of the two exceptions identified above can save the case from dismissal. First, Plaintiffs maintain that this case falls within the voluntary cessation mootness exception outlined above. (Doc. 12 at 24–31.) This exception recognizes that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189

(2000).  Deprivation despite cessation does occur, however, when it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014).  Establishing this is Defendants burden to bear.  *Id.*

In cases where the government ceases its allegedly unlawful behavior, federal courts must presume that it has done so in good faith.  *Id.*  Nonetheless, the government must still "bear the heavy burden of showing that the challenged conduct cannot reasonably be expected to start up again."  *Id.*  But this burden is met when the record demonstrates the government's change of heart constitutes an unequivocal and permanent alteration of official policy rather than "a temporary [change] that the agency will refute once" the case is dismissed.  *White*, 227 F.3d at 1243.

Here, as discussed above, the record demonstrates that the Forest Service has unequivocally withdrawn the Project.  (Doc. 9 at 30.)  Further, any re-initiation of the Project will flow through the proper channels and result in the production of a new administrative record.  (Docs. 9 at 2–3; 13 at 12–13; 14 at 2.)  This is fatal to Plaintiffs' argument that the injuries complained of here can reasonably be expected to reoccur.  *League of Wilderness Defenders-Blue Mountains Biodiversity Project v. Smith*, 2006 WL 3692535, *4–5 (D. Or. 2006) (rejecting application of the voluntary cessation exception where "[t]o authorize a new project in the High

15

Roberts area, the Forest Service would need to acquire new data, make new decisions including issuing new notice, provide opportunity for public comment, and finally issue a new decision that must comply with all applicable laws and which would be subject to challenge"); *see also Forest Serv. Emps. For Envtl. Ethics v. U.S. Forest Serv.*, 408 F. Supp. 2d. 916, 918–19 (N.D. Cal. 2006) (rejecting application of the voluntary cessation exception where "any subsequent decision to proceed with the [project] would need to pass through the administrative process once again"). The voluntary cessation exception is inapplicable.

Second, Plaintiffs argue that the conduct complained of is capable of repetition, yet evading review. (Doc. 12 at 31.) As noted above, this mootness exception only applies "in exceptional situations, where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Hamamoto v. Ige*, 881 F.3d 719, 722 (9th Cir. 2018) (per curiam). Both requirements must be met. *See United States v. Sanchez-Gomez*, 138 S.Ct. 1532, 1540 (2018). This is not the case here.

Specifically, in order for the first prong of this exception to be met, the controversy itself must be of an "*inherently* limited duration." *Hamamoto*, 881 F.2d at 722. This means the nature of the action must fall within a "class[] of cases

16

that, absent an exception, would always evade judicial review." *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 836 (9th Cir. 2014). In other words, this exception only applies to the rare case that, as is clear from its inception, "will only ever present a live action until a particular date, after which the alleged injury will either cease or no longer be redressible." *Id.* The narrow scope of this exception excludes controversies that "as a practical matter" may evade review but that carry "no risk that future repetitions of the controversy will necessarily evade review as well." *Id.* at 836–37. This is precisely the case here.

While the Project's withdrawal undoubtedly insulates it from review, actions of this sort are not inherently of such limited duration that they will always become moot before judicial review can be accomplished. Plaintiffs only argument in support of this exception is that "the Forest Service's practice of withdrawing timber sale decisions before a court may rule on the merits means that the challenged decisions are in existence for too short a time period to allow full litigation." (Doc. 12 at 31.) But this confuses the inquiry. As noted above, the focus is not on the particular facts underlying certain challenges to Forest Service projects, but rather the inherent nature of such challenges themselves.

Actions challenging the validity of Forest Service projects are well recognized and routinely last long enough for complete adjudication. *See Alliance for the Wild Rockies v. U.S. Forest Service*, 907 F.3d 1105, 1109–10 (9th Cir.

2018).  Such actions are in contrast to disputes involving abortion rights, the validity of a temporary injunction, or "a purportedly invalid law [that] inhibits a political candidate or party's ability to win an election" which have previously been found to fall within the exception at issue because of the narrow window in which meaningful relief can be afforded.  *Bowen*, 752 F.3d at 836.  In short, the timeline in which meaningful relief can be afforded in disputes regarding the validity of Forest Service projects are not of such a temporally limited character that they will always evade judicial scrutiny.  This renders the exception inapplicable.

Ultimately, the Court concludes that this lawsuit is moot and neither of the two mootness exceptions apply.  As such, this Court is without subject matter jurisdiction and the case must be dismissed.

Accordingly, IT IS ORDERED that the Defendants' motion (Doc. 7) is GRANTED.

IT IS FURTHER ORDERED that the above-captioned matter is DISMISSED without prejudice.

The Clerk of Court is directed to close the case file.

DATED this 24th day of November, 2020.

_____
Dana L. Christensen, District Judge
United States District Court